Charles J. Bonzer, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued September 15, 1982, before Judges Rogers, Williams, Jr. and MacPhail, sitting as a panel of three.

634

*John George Shorall, II,* with him *George Shorall, Shorall and Shorall,* for petitioner.

*Michele Straube,* for respondent.

OPINION BY JUDGE ROGERS, November 10, 1982:

Charles J. Bonzer seeks review of an order of the Environmental Hearing Board affirming an order of the Department of Environmental Resources (DER) requiring him at his expense to make repairs to a system of storm water culverts and a watercourse located on property he owns in Baldwin Borough, Allegheny County.

At a hearing conducted on October 2, 1980, DER's witnesses established that Bonzer's property is located at the confluence of an intermittent stream denominated by Baldwin Borough as Tributary Number 1 and a watercourse known as Streets Run; that the origin or headwaters of Tributary Number 1 is located on higher ground approximately one mile to the west of Streets Run and Bonzer's property; that the course of Tributary Number 1 from its origin to Streets Run consists in part of open channel and in part of structures including culverts and stream enclosures; that the culverts and enclosures located on Bonzer's property as well as those located on the adjacent property of the Baltimore & Ohio railroad and

those located below the right-of-way of Streets Run Road (a Commonwealth highway) are inadequate to accommodate Tributary Number 1 following heavy rains; that as a result of the inadequacy of these structures flooding has occurred on Streets Run Road, the property of the railroad, and on Bonzer's property at least semi-annually since the early 1960's; that the culverts and stream enclosures located on Bonzer's property include a sixty-foot section of steel culvert approximately four and one-half feet in diameter which has collapsed or partially collapsed throughout its length; and that in the opinion of Lawrence D. Busack, a hydraulic engineer for the DER's Bureau of Dams and Waterways, replacement or repair of the collapsed steel culvert just described is necessary to prevent future flooding.

On the basis of this evidence the DER, affirmed by the Environmental Hearing Board found that Bonzer had violated regulations of the Environmental Quality Board promulgated pursuant to Section 5 of the Dam Safety and Encroachments Act, Act of November 26, 1978, P.L. 1375, *as amended*, 32 P.S. §693.5 and by Order dated January 31, 1980, ordered him, within thirty days, to remove the inadequate culverts, to construct an adequate open channel for Tributary Number 1 between Streets Run and Streets Run Road, to "stabilize" the banks of this open channel, and, by May 31, 1980, to "revegetate" a portion of the western bank of Streets Run and all areas disturbed by the removal of the old culverts and construction of the new channel.

By its decision and order DER thereby rejected Bonzer's arguments that he is not the owner of the existing culverts and enclosures on his land but that they are owned by the County of Allegheny and that it is fundamentally unfair and improper to place on him the cost of correcting a condition hazardous to the

public generally and created by circumstances involving no fault or affirmative conduct on his part. With respect to this latter point, Bonzer argued that the cause of the flooding is the mismanagement of lands at the headwaters in combination with the inadequacy of structures located within the course of Tributary Number 1 on lands of others including the railroad, a soft drink manufacturer, and Streets Run Road. On this appeal Bonzer renews these arguments and contends that the agencies' determinations are, in these respects, "against the weight of the evidence."

Our scope of review with respect to decisions of the Environmental Hearing Board is limited to a determination of whether constitutional rights have been violated, an error of law committed, and whether each necessary factual finding is supported by substantial evidence. *Lucas v. Department of Environmental Resources,* 53 Pa. Commonwealth Ct. 598, 420 A.2d 1 (1980); *Summerhill Borough v. Department of Environmental Resources,* 34 Pa. Commonwealth Ct. 574, 383 A.2d 1320 (1978).

Bonzer's evidence of the county's ownership of the culverts and stream enclosures consisted of the testimony of Raymond D. Locke, a retired engineer formerly of the Commonwealth Department of Labor and Industry and of the Department of Transportation, speaking of a time prior to Bonzer's ownership of the property, to the effect that the structures were installed by unidentified workers operating equipment emblazoned with the county's insignia; and of a plat prepared by Bonzer in applying for the approval of the Borough of Baldwin for a subdivision of the property here at issue showing an easement, fifteen feet in width, in the approximate location of the culverts. The grantee of the purported easement is not indicated on the subdivision plat, no other documentary evidence of the grant or reservation of an easement was produced,

and Mr. Locke further testified that although he believed the county to have been responsible for the construction, some twenty years earlier, of the culverts he did not believe the county to have taken or received at that time any interest in the lands now owned by Bonzer. Factual determinations and the assessment of conflicting evidence are within the province of the Environmental Hearing Board. We see no reason to disturb its finding that no easement was shown to exist.[1]

From the decision below, it appears that the Environmental Hearing Board treated Bonzer's second contention as raising three issues: whether substantial evidence supported the DER's determination that the condition of the culvert's underlying Bonzer's property was the cause of the flooding; whether culpability of a landowner is a necessary prerequisite to the governmental exercise of its police power directed toward compelling the landowner to rectify a hazardous condition on his property; and whether the regulations promulgated pursuant to the Dam Safety and Encroachments Act empower the DER to issue the order here challenged.

The causal link between the culverts on Bonzer's property and the flooding of his and adjacent properties is supported by the following testimony of Lawrence Busack, DER's hydraulic engineer:

---

[1] In his brief filed in support of this appeal Bonzer argues without citation to authority, that an easement in favor of the county has been created by implication. To be sure, an easement by implication may arise with respect to a natural or artificial watercourse, see e.g. Seibert v. Levan, 8 Pa. 383, 49 A.D. 523 (1848). However, the creation of such an interest requires with respect to the lands involved a conveyance or other separation of title—the circumstances of the grant implying the existence of an easement. Here, so far as was shown by Bonzer's evidence, the County of Allegheny has never been either a grantee or a grantor of any of these lands.

[After describing the entire system of culverts and channels within the course of Tributary Number 1, the following direct testimony of Mr. Busack was elicited:]

Q: Which one of these culverts has the least capacity for flow? In other words, I guess what I am asking, where is the bottleneck of all the ones you testified to?

. . . .

A: If the pipes were all round, or were all in structurally sound condition, the pipe that would be the bottleneck would be the one that ran under Streets Run Road.

But the current condition of the pipes downstream of that 30 inch pipe being crushed, that is obviously the bottleneck, because this tire that was obstructed into the larger culvert went through the 30 inch culvert first and it blocked the four and a half by five foot culvert.

So I would say now the obstruction is this four and a half by five, three and a half foot steel culvert.

Mr. Busack elaborated on this testimony as follows during his cross-examination:

Q: Now, where did the clog occur? Doesn't it occur at the 30 inch underneath the State of Pennsylvania property? Isn't that the problem?

A: The clog occurs in the three and a half foot steel pipe.

Q: Where is that, under whose property?

A: Under Bonzer's property.

Q: You mean to tell me, we put 30 inches into 48 inches and we don't get a clog in the 30 inches?

A: 30 inches into 42 inches, and the clog is downstream of the 30 inch pipe, because the 42

inch pipe is distorted. It is not circular. It is not really a pipe. It is some kind of a disjointed, bent up structure that originally was probably circular or probably round, but it has since been crushed.

This section of culvert underlying Bonzer's property was earlier described by Mr. Busack in the following terms:

The 2.5 by 3.6 foot steel pipe apparently was round and had been crushed. Apparently it was circular and it has been crushed to that shape.

It has about 10 feet of fill over the top of it. It is thin gauge steel, rusted, and it has maybe a couple of inches of debris in it. It is in relatively decent shape.

The large culvert, the four and a half by five and a half foot culvert is severely crushed and distorted. It has been laid in sections, and the sections are disjointed. Where the joints come together, the joints are open.

It seems to be—*it is collapsed or partially collapsed* throughout most of its length. (Emphasis added.)

This testimony adequately supports the DER's finding that the condition of Bonzer's property is causally related to the flooding.

The DER apparently concedes that Bonzer was not responsible for the design or construction of the collapsed culverts and that there is no reason to believe that his actions caused their present state of disrepair. However, DER argues that Bonzer may nevertheless be required to correct the hazardous condition on his property. In *National Wood Preservers v. Commonwealth, Department of Environmental Resources*, 489 Pa. 221, 414 A.2d 37 (1980) *appeal dism'd* 449 U.S.

803 (1980), the Supreme Court rejected the contention that some form of fault is necessary in order to impose liability, pursuant to the Clean Streams Law, on a landowner for pollution emanating from his property. The Court there wrote:

> [A]ppellants advance the somewhat unique argument that Section 316 [of the Clean Streams Law] is unduly oppressive because it imposes liability upon appellants solely on the basis of their ownership or occupancy of the land in question. It is unconstitutional, argue appellants, for DER to issue a corrective order to a landowner or occupier absent a showing of the party's responsibility for causing the polluting condition.[16]
>
> . . . .

We disagree. First it is absolutely clear that the corrective orders here are based on much more than mere ownership or occupancy. As discussed above, they are based upon legislation designed to eliminate all water pollution, and the Environmental Hearing Board's findings that a substance, determined to be pollution, resides under appellant's land and can feasibly be removed. There is thus a reasonable and concrete basis for the corrective orders here.

It is also clear that the validity of an exercise of police power over land depends little upon the owner or occupier's responsibility for causing the condition giving rise to the regulation.

---

[16] Appellants assume that they have acted without "fault" and have not "caused" the pollution. In light of our disposition of this case, we need not consider this assumption.

*Id.* at 237-238, 414 A.2d at 45. In Note 18, 489 Pa. at pages 239-240, 414 A.2d at 46, the Court continued its analysis:

18. It is appropriate that a property holder's responsibility has little significance in determining the validity of the state regulation. In criminal law, of course, inquiry into a defendant's "culpability" is at the core of guilt determination and punishment. In the field of tort law, the notion of "fault" is not an inappropriate limitation on liability because, among other reasons, the beneficiary of tort compensation, like the tortfeasor, is a private party. The notion of fault is least functional, however, when balancing the interests of a property holder against the interests of a state in the exercise of its police power, because the beneficiary is not an individual but the community. As this Court stated in an analogous setting: "The absence of facts supporting concepts of negligence, foreseeability or unlawful conduct is not in the least fatal to a finding of the existence of a common law public nuisance." Barnes and Tucker I, [455 Pa. 392, 414, 319 A.2d 871, 883 (1974)].

We note that in *Department of Environmental Resources v. U.S. Steel Corporation,* 17 Pa. Commonwealth Ct. 591, 333 A.2d 489 (1975) and in *Commonwealth v. Wyeth Laboratories,* 12 Pa. Commonwealth Ct. 227, 315 A.2d 648 (1974) as well as in *Philadelphia Chewing Gum Corporation v. Department of Environmental Resources,* 35 Pa. Commonwealth Ct. 443, 387 A.2d 142 (1977), *aff'd sub nom. National Wood Preservers, Inc. v. Department of Environmental Resources,* 489 Pa. 221, 414 A.2d 37 (1980) *appeal dism'd* 449 U.S. 803 (1980), this court reversed determinations of the DER requiring faultless landowners to

correct environmental hazards. *Accord McCabe v. Watt,* 224 Pa. 259, 73 A. 455 (1909). However, Bonzer here relies on none of these authorities and we believe they may be reconciled with *National Wood Preservers* as involving, additionally, imposition by the DER on the landowner of requirements for corrective action which were unduly oppressive or infeasible, *Wyeth Laboratories,* or imposition by DER of requirements for corrective action on one who was, in fact, not the landowner, *Department of Environmental Resources v. U.S. Steel Corporation.* Moreover, that aspect of the decision of this Court in *Philadelphia Chewing Gum Corporation* requiring a showing by DER of the defendant landowner's culpability is, as we have discussed, of questionable continuing viability.

Of course, an exercise of the state's police power in the interests of the public generally will not stand if the manner of the interposition of the state's authority is "unduly oppressive upon individuals." *Lawton v. Steele,* 152 U.S. 133, 137 (1894); *National Wood Preservers* at 234, 414 A.2d at 43-44; *Commonwealth v. Barnes & Tucker,* 455 Pa. 392, 418, 319 A.2d 871, 885 (1974); *Commonwealth v. Harmer Coal Co.,* 452 Pa. 77, 93, 306 A.2d 308, 317 (1973); *Holland Enterprises v. Joka,* Pa. Commonwealth Ct. , 439 A.2d 876 (1982). However, the degree to which an individual is oppressed by a regulatory act like that here at issue can be determined only with reference to the land-owner's cost of compliance—a subject concerning which Bonzer adduced no evidence. We are therefore precluded from entering into an inquiry as to whether the DER's actions in this case are violative of this constitutional limitation.

Finally, we consider the statutory and regulatory authority of DER to issue the order here subject to review. As we have indicated, Bonzer must, pursuant to the order, remove the existing inadequate culverts,

construct an "adequate open channel for Tributary No. 1 ... between Streets Run and Streets Run Road," "stabilize" the banks of the newly constructed channel and "revegetate" all areas disturbed by the construction "including unstable banks on Streets Run."

The applicable regulations are to be found in Subchapters C and D of Chapter 105 of Title 25 of the Pennsylvania Code which provide in pertinent part:

### SUBCHAPTER C. CULVERTS AND BRIDGES

### GENERAL PROVISIONS

§105.141 Scope

... [T]he provisions of this subchapter shall govern the construction; alteration, enlargement, repair, maintenance, and removal of any bridge or culvert. ...

. . . .

§105.172 Inadequate or Collapsed Structures.

. . . .

(b) Whenever a bridge or culvert or any portion thereof has collapsed or is in imminent danger thereof, the owner or permittee thereof shall immediately remove any and all collapsed portions to an area outside the floodplain of the stream and *either:*

(1) completely remove the structure

*or*

(2) repair the structure in accordance with plans submitted to and approved by the Department (emphasis added).

In our view these provisions clearly evince an intent not to require the private owner of a bridge or culvert to do any more, in the case of the collapse of the structure, than to completely remove the structure from the watercourse. There is no duty imposed on the private landowner who has removed the structure

to construct an adequate structure or replace the old with a new one. Under these regulations a landowner *may* submit to the DER plans for the repair or replacement of a collapsed bridge or culvert; but he may also satisfy his obligation to the public by simply removing from the watercourse all structural obstructions and encroachments. This regulatory scheme appears to us to be entirely reasonable and requires that we reverse the order of the DER insofar as it seeks to compel Bonzer to do more than remove the existing collapsed culverts from the watercourse.[2]

We have reviewed the Dam Safety and Encroachments Act and the relevant regulations and find nothing which empowers the DER, having ordered removal of the culverts, to additionally require Bonzer, or any landowner, to "stabilize" or "revegetate" the stream, as Bonzer was additionally ordered to do, and there is nothing in this record as to the extent or nature of the work this directive entailed much less any reasons advanced for its necessity, and we reverse the order insofar as it requires Bonzer to stabilize and revegetate Tributary No. 1 and the banks of Streets Run.[3]

---

[2] *Pawk v. Department of Environmental Resources*, 39 Pa. Commonwealth Ct. 457, 395 A.2d 692 (1978) on which the appellee relies, appears to have involved an order of the DER requiring only the removal of an inadequate culvert.

[3] We also note that repeated reference has been made throughout this proceeding to the failure of either Bonzer or his predecessors in title to obtain a regulatory permit for the culverts and stream enclosures although, as the DER now concedes in its brief, no permit was required under the Dam Safety and Encroachments Act at the time of the issuance of the order now challenged. Section 6(c) of the Act, 32 P.S. §693.6(c). Under the terms of this provision it is also problematic whether the owner of an unpermitted culvert is required to comply with the regulations having to do with construction and capacity of the structure prior to January 1, 1981. Bonzer's failure to raise this issue below precludes our resolution of it at this time.

Accordingly we enter the following

ORDER

AND Now, this 10th day of November, 1982 the order of the Environmental Hearing Board is reversed insofar as it affirms paragraphs 1(b) and 1(c) and 3 of the order of the Department of Environmental Resources entered in the above-captioned matter on January 31, 1980. In all other respects the order of the Environmental Hearing Board is hereby affirmed.