387 A.2d 1292

**REDEVELOPMENT AUTHORITY OF ALLEGHENY COUNTY**

v.

**Mary J. STEPANIK, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1977.

Reassigned April 26, 1978.

Decided June 5, 1978.

Leonard M. Mendelson, Pittsburgh, for appellant.

William J. Fahey, P. Ronald Cooper, Redevelopment Authority of Allegheny County, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Mary Stepanik owned, but did not occupy, a residential apartment building renting living space to others. A board of viewers awarded appellant general damages of $23,000 under the Eminent Domain Code [1] for the taking of the building by appellee Redevelopment Authority of Allegheny County. The board of viewers also awarded appellant $10,000 of additional, special dislocation damages under Section 601–A(b)(3) of the Code, 26 P.S. § 1–601A(b)(3). Appellee appealed the board's award of $10,000 to the Court

---

1. Act of June 22, 1964, P.L. 84, §§ 601–603, 26 P.S. §§ 1–601–1–603 (Supp. 1977).

of Common Pleas of Allegheny County, contending that the award violated a regulation of the Attorney General of Pennsylvania limiting the award of special dislocation damages to businesses conducted for the lease or rental of real property.[2] The court of common pleas affirmed the viewer's award of special dislocation damages and the Commonwealth Court reversed. We granted appellant's petition for allowance of appeal and affirm.[3]

Section 201(8) of the Code, 26 P.S. § 1–201(8), defines "Displaced persons:"

> " 'Displaced person' means any condemnee or other person not illegally in occupancy of real property who moves or moves his personal property as a result of the acquisition . . . . ."

Section 601–A(b)(3), 26 P.S. § 1–601A(b)(3), permits a displaced person "displaced from his place of business" to recover moving expenses and expenses of "removal, transportation, and reinstallation of personal property," § 601–A(a), 26 P.S. § 1–601A(a), and damages for losses of personal property, § 601–A(b), 26 P.S. § 1–601A(b).

"Displaced persons" may also recover special dislocation damages under Section 601–A(b)(3). These damages are calculated in one of two manners. "Owner-occupants" are entitled to the greater of forty times "fair monthly rental value" and average annual net earnings, in a sum no less that $2500 but no more than $10,000. "Tenants" may also recover these damages based upon actual monthly rent instead of "fair monthly rental value." Owner-occupants and tenants may recover this additional sum "only if the business (i) cannot be relocated without a substantial loss of its existing patronage, and (ii) is not part of a commercial

**2.** Regulations of the Attorney General on Uniform Relocation Assistance, Reg. 103.4(d), 2 Pa.B. 1335. See infra note 4. The parties have stipulated that if appellant prevails in invalidating the regulation, she is entitled to $10,000; if not, $2500.

**3.** We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp. 1977). This case was reassigned to the writer on April 26, 1978.

enterprise having at least one other establishment not being acquired by the acquiring agency, which is engaged in the same or similar business." § 601–A(b)(3), 26 P.S. § 1–601A(b)(3).

Thus, special dislocation damages sought here are part of a cluster of benefits, including moving expenses and damages for lost personal property. They provide temporary income for a displaced commercial enterprise unable to absorb, through increased sales at another business location, losses caused by condemnation.

■ Appellant contends that she is an "owner-occupant" within the meaning of Section 601–A(b)(3) entitled to this temporary income. Thus, she argues that the Attorney General's regulation, denying businesses conducted for lease or rental of real property an award based on fair monthly rental value, is invalid.[4] The Legislature did not intend a condemnee such as appellant to receive special dislocation damages and therefore we reject appellant's theory for invalidating the regulation.

■ The $23,000 award of general damages fully compensates appellant for the taking of her property and the lost income Section 601–A(b)(3) provides. The Eminent Domain Code, § 602(a), 26 P.S. § 1–602(a), fixes damages for property taken at the difference between "fair market value" before and after taking. "Fair market value" is defined as the "price which would be agreed to by a willing and informed seller and buyer." § 603, 26 P.S. § 1–603. As is true of all buildings, the "price" of an apartment building renting living space to others is its fair market value. One method of determining fair market value is to calculate the present value of future rental income. See *In re Condemnation of 10.09 Acres in Lower Swatara Twp.*, 92 Dauph. 314

---

4. Regulation 103.4(d) provides:
   "In the case of a business conducted for the lease or rental of real property, payment under the Code subsection (b)(3) shall be limited to the average net earnings (subparagraph (ii))."
   The Attorney General has subsequently amended the regulation. 37 Pa.Code § 151.4(4)(iv).

(1970) (capitalization of net rents employed to determine fair market value); accord, *United States v. 3,698.63 Acres of Land,* 416 F.2d 65 (8th Cir. 1969); see 1 Orgel, Valuation Under Eminent Domain § 179 (2d ed. 1953); Annotation, "Income As An Element In Determining Value of Property Taken In Eminent Domain," 65 A.L.R. 455 (1930). Thus, "fair market value" of a rental enterprise such as appellant's would include rental income lost while the owner searches for a new location. Because appellant has already received compensation for rental income through the award of general damages, an award of special dislocation damages would grant appellant an unintended double recovery.

The Legislature's careful limitation of eligible recipients to "person[s] . . . displaced from [their] place of businesses" reveals its intent to deny special dislocation damages to landlords such as appellant not physically occupying the premises condemned. Neither appellant nor her business physically occupied the premises. Hence, neither she nor her business was displaced from the premises in the common, everyday sense of those terms as used in Section 601–A(b)(3). See 1 Pa.C.S.A. § 1903(a) (Supp. 1977) (directing that statutory language be given plain and ordinary meaning). Because the taking did not displace appellant, this section of the Code precludes her recovery of special dislocation damages.

Order of the Commonwealth Court affirmed.

PACKEL, former Justice, did not participate in the consideration or decision of this case.

NIX, J., concurs in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I must dissent. The majority ignores its own well-established rule that issues not raised by the parties will not be considered, and that stipulations entered into by the parties will be honored in the absence of fraud, accident or mistake—none of which are raised or alleged in this case.

Contrary to what this Court has said on various occasions, the majority decides this appeal on an issue which was not raised by the parties, not briefed by the parties, and not argued by the parties. The majority holds that neither the appellant nor her business was displaced from the premises. Not only did neither party raise any issue concerning displacement, but the parties stipulated that the appellant's business *was* displaced.

Furthermore, the majority has completely distorted the Eminent Domain Code and rewritten its provisions. The majority states that an owner, who has been paid for the fee, has been paid on the basis of rental income, and therefore is not entitled to business relocation damages. That reasoning should be rejected for two reasons.

First, the legislature, not this Court, wrote the Eminent Domain Code, and, as will be explained later, it specifically defined "business" to include the business of renting real property. If that definition does not relate to the section allowing business dislocation damages, it is completely superfluous. The definition does not relate in any way to any provision of the Eminent Domain Code except the business dislocation section. If, as the majority holds contrary to this clear definition in the Eminent Domain Code, the word "business" does not include the business of renting real property, the definition in the Code serves no purpose.

Secondly, the majority reasons that one who is paid for the fee has already been compensated for loss of rental income. Even if this is true, it is none of our business. The legislature has specified otherwise. I cannot agree, however, with the majority's conclusion. People invest in real estate because they expect a greater return on their investment than would be received in a savings account. When a citizen's rental property is taken, and they are given money in return, a period of time must elapse before that money can be reinvested in new rental property. During that time the earnings of that money may not equal what it would earn invested in real estate.

It is clear in the Eminent Domain Code that one who receives business dislocation damages need not prove such damages. Indeed, there is no requirement that a citizen relocate any business. A citizen is entitled to receive the business dislocation damages and never go into business again. Business dislocation damages were assumed by the legislature in all cases in order to avoid the evidentiary hearing about actual losses which plagued the eminent domain field before the new Eminent Domain Code was put into effect.

The majority completely ignores the liberal construction to be given to the Eminent Domain Code in order to fully compensate condemnees. In doing so it has not analyzed the purpose of the Code. My reading of the Code, and the regulation of the Attorney General implementing it, persuades me that the board of view and court of common pleas were correct in awarding appellant $10,000 in business dislocation damages. The controlling section of the Eminent Domain Code, casually glossed over by the majority opinion, is § 601–A. It provides in pertinent part:

"§ 601–A . . .

(a) . . .

(b) Any displaced person who is displaced from his place of business . . . shall be entitled . . . to damages for dislocation of such business . . . as follows:

(1) . . .

(2) . . .

(3) . . . damages of not more than ten thousand dollars ($10,000) nor less than twenty-five hundred dollars ($2,500.00), in an amount equal to either (i) forty times the actual monthly rental, in the case of a tenant, or forty times the fair monthly rental value, in the case of owner-occupancy; or (ii) the average annual net earnings, whichever is greater."

Appellant contends that the above section establishes only *two* categories of affected persons, one category comprised of *tenants* and the other category comprised of *owner-occu-*

*pants.* According to appellant, all persons whose businesses are dislocated must fall into one category or the other. Once it is determined which category the person falls into, that person is entitled, in the case of a tenant, to forty times the actual monthly rental or the average annual net earnings, whichever is greater. If it is determined that the person is an owner-occupant, that person is entitled to forty times the fair monthly rental value, or the property's average annual net earnings, whichever is greater.

The appellee contends, on the other hand, that Section 601–A(b)(3) creates *three* categories of affected persons. One category is comprised of *tenants,* the second category is comprised of *owner-occupants,* and the third category is comprised of *all other persons* whose businesses are dislocated but who do not qualify as tenants or owner-occupants. The genesis of appellee's interpretation is Regulation 103.-4(d) of the Uniform Relocation Assistance Regulations, promulgated by the Attorney General pursuant to his statutory authority to issue implementing regulations. As applied to this case (the Regulation has since been amended), Regulation 103.4(d) provided:

"In the case of a business conducted primarily for the lease or rental of real property, payment under Code subsection (b)(3) shall be limited to the average annual net earnings (subparagraph (ii))."

The regulation, in effect, limits some persons whose businesses are dislocated to damages measured by the "average annual net earnings." If the regulation is valid, the parties agree it applies to the business dislocated in this case.

Appellant argues that the regulation is not a regulation that implements the Code, but rather a regulation which is invalid because it is contrary to the Code. The board of view and the court of common pleas agreed with the appellant. The Commonwealth Court agreed with the appellee. The first question squarely presented for our resolution, therefore, one never addressed by the majority, is whether Regulation 103.4(d), in establishing three categories of dislocated businesses, is a proper interpretation of § 601–A(b)(3).

My reading of § 601–A(b)(3) convinces me that appellant is correct that the Attorney General's regulation cannot be reconciled with the language of that section. Section 601–A(b)(3) does not establish three categories of persons displaced. Rather, it establishes only two categories. The last phrase in the section states that damages may be "the average annual net earnings *whichever is greater.*" Read in context, the use of the last three words "whichever is greater" indicates that the entire phrase is related to that which preceded. (The greater of either the average annual net earnings, or forty times the monthly rental in the case of a tenant or forty times the fair monthly rental value in the case of an owner-occupant.) The phrase refers to the amount of damages to which a *tenant* or an *owner-occupant* is entitled. There is nothing anywhere in the subsection from which it can reasonably be concluded that there is a third category of persons affected other than tenants or owner occupants. Therefore, the regulation, which attempts to limit certain persons whose businesses are dislocated from receiving any damages except "annual net earnings," is invalid because contrary to the statute. *See also* 26 P.S. § 1–604A(b)(4) ("Attorney General shall promulgate such rules and regulations as may be necessary to assure [t]hat each displaced person shall receive the maximum payments authorized by this article").

I repeat—there *was* no dispute in this case that appellant's business was displaced. The Eminent Domain Code expressly states that a displaced business can include the business of renting real property (26 P.S. § 1–201(7)(i)); Regulation 103.4(d) states, by necessary implication, that appellant and those similarly situated are displaced from their business; and the parties agreed that appellant was displaced. The parties asked us only to determine whether appellant, whose business, the parties stipulated to, "cannot be relocated without a substantial loss of its existing patronage," was entitled to *compute her dislocation damages* by taking forty times the fair monthly rental value of the property not to exceed $10,000.

That brings us to the second issue this appeal presented for this Court's resolution: whether appellant is an "owner-occupan[t]" within the meaning of § 601–A(b)(3). The first issue—the validity of Regulation 103.4(d)—was never decided by the Court. This second issue—a pure question of statutory interpretation—is answered not by a careful analysis of § 601–A(b)(3) but rather, by a cursory conclusion that appellant was not an owner-occupant because neither appellant nor her business "physically occupied the premises." An analysis if the Eminent Domain Code's scheme for allowing rental businesses dislocation damages clearly demonstrates that the majority's interpretation of the Code is erroneous.

In providing for dislocation damages for the business of renting real property, the Legislature recognized that an established business, including the business of renting property, will suffer a loss in profit as a result of having to relocate. Appellant's business was renting available space suitable for residential purposes. She stands to suffer business losses due to this condemnation no less than if her business consisted of selling goods.

The "owner-occupancy" phrase in the subsection clearly refers to the *business* of the owner. If the owner's business occupies the property, the situation which exists is one of owner-occupancy. It is not the *person* displaced that must occupy the building. It is that person's *business* which must occupy the property. For purposes of the Eminent Domain Code, one's business occupies a building when that person's business was the renting of the condemned property. It is true that in a common law sense, it is the renters who occupy the building. This does not mean, however, that the appellant's business of renting does not occupy the same property for purposes of the Eminent Domain Code. The term must be read in the context in which it appears, and not read as the word occupant or occupancy might be read in unrelated contexts. The parties to this appeal agree that the appellant had a business which was dislocated under the Eminent Domain Code. The business could hardly have been dislocated if it did not occupy the premises.

The majority's reference to appellant's physical occupation of the building misperceives the import of § 601–A(b)(3). Under the majority's reasoning, Owner A, who owns a condemned apartment building with 100 units and occupies one unit therein, is entitled to elect the higher dislocation damage amount, whereas Owner B, who owns an apartment building of 100 units but does not occupy a unit, is limited to the annual average net earnings. Such a result cannot be reconciled with the *business* dislocation section of the Eminent Domain Code, which compensates owners not for personal moving expenses but for the loss of patronage suffered as a result of the condemnation.

The board of view correctly awarded appellant $10,000. I would reverse the order of the Commonwealth Court and reinstate the board of view's award.