Lowell B. JACKSON, Secretary Department of Transportation
 You have asked for my opinion on this question: *Page 264 
 What is sufficient occupancy of a business operation to make an owner eligible for a business replacement payment under [the Wisconsin Relocation Act] s. 32.19(4)(a)(intro.), Stats. [as affected by chs. 221 and 358, Laws of 1979]?
Section 32.19(4m)(a)(intro.), Stats., as amended effective July 17, 1980, reads in pertinent part:
 In addition to amounts otherwise authorized by this chapter, the condemnor shall make a payment, not to exceed $50,000 to any owner displaced person who has owned and occupied the business operation, or owned the farm operation, for not less than one year prior to the initiation of negotiations for the acquisition of the real property on which the business or farm operation lies, and who actually purchases a comparable replacement business or farm operation for the acquired property within 2 years after the date the person vacates the acquired property or receives payment from the condemnor, whichever is later.
The business replacement payments under sec. 32.19(4m)(a), Stats., include the amount over the acquisition price of the business property which is required to purchase a comparable replacement, additional financing costs, and reasonable expenses incurred in the purchase of the replacement property for evidence of title, recording fees and closing costs. Tenant businesses are also eligible for replacement payments but the maximum payment is limited to $30,000. Sec. 32.19(4m)(b), Stats.
Several terms used in subsec. (4m)(a)(intro.) are specifically defined for purposes of sec. 32.19, Stats.
 "Displaced person" means any person who moves from real property or who moves his personal property from real property . . . as a result of the acquisition of such real property, in whole or in part or subsequent to the issuance of a jurisdictional offer under this chapter, for public purposes or, as the result of the acquisition for public purposes of other real property on which such person conducts a business or farm operation . . . .
Sec. 32.19(2)(c), Stats.
 "Business" means any lawful activity, excepting a farm operation, conducted primarily: *Page 265 
 1. For the purchase, sale, lease or rental of personal and real property. . . .
Sec. 32.19(2)(d)1., Stats.
 "Owner displaced person" means a displaced person who owned the real property being acquired and also owned the business or farm operation conducted on the real property being acquired.
Section 32.19(2)(i), Stats., as amended by ch. 358, Laws of 1979.
The circumstances in which this law might apply are many and varied. The hypothetical examples you have cited to illustrate your inquiry involve situations in which tenants have used real estate for business operations and the landlords have not had exclusive possession of the premises. Restating your question in light of those examples, is an absentee landlord eligible for business relocation payments under sec. 32.19(4m), Stats? In my opinion, the answer is no.
The term "occupied" as used in sec. 32.19(4m)(a), Stats., is not defined in the statute and its meaning is not readily apparent when the subsection in which it is found is read in conjunction with other provisions of the section. Generally, owners of rental property are engaged in business as defined in the Relocation Assistance Act. When their rental property is acquired by a condemnor, landlords may be required to move their personal property from the premises and may also suffer loss of business income for which the Relocation Act provides compensation under specifically prescribed circumstances. Sec.32.19(3), Stats. Such payments may be made regardless of whether the displaced landlords actually relocate their businesses elsewhere. Moreover, these payments are in addition to whatever amount is awarded as just compensation for the taking of the property itself. If displaced landlords choose to continue in the business of renting property, they must acquire replacement property in the same manner as displaced owners of grocery stores, drug stores, or filling stations. Therefore, in light of the benefits conferred on displaced landlords under prior law and the ambiguity inherent in the recently enacted amendment to that statute, it is appropriate to resort to the rules of statutory construction to determine what limitations, if any, the Legislature intended to impose on eligibility for business replacement payments. Aero Auto Parts, Inc. v. Dept. of Transp.,78 Wis.2d 235, 241, 253 N.W.2d 896 (1977). *Page 266 
As noted above, the preconditions for eligibility for business relocation payments under sec. 32.19(3), Stats., do not include occupancy of the premises taken by the condemnor. Nevertheless, sec. 32.19(4m)(a), Stats., as amended, adds that condition. Section 990.01(1), Stats., requires that all words and phrases in the statutes must be construed according to their common and approved usage. According to Webster's, "occupy" means to "take or hold possession of . . . to reside in as an owner or tenant."Webster's New Collegiate Dictionary 787 (1979). Black's LawDictionary defines "occupancy" as "taking possession of property and use of the same" and "occupant" as the "[p]erson in possession . . . having possessory rights, who can control what goes on the premises." Black's Law Dictionary 973 (5th ed. 1979). Thus, it would appear a person who owns rental property also would have to physically occupy it in order to be eligible for business replacement payments. Moreover, since the lease itself is an interest in the property, the tenant, in a sense, becomes the owner of the leased property insofar as the tenant has clearly defined legal rights of possession and use. Holcombv. Szymczyk, 186 Wis. 99, 102, 202 N.W. 188 (1925); 68 Op. Att'y Gen. 114, 116 (1979). Therefore, under present landlord-tenant law, it is difficult to perceive how a landlord can both own and occupy a leasehold estate at the same time.
If the word "occupied" in subsec. (4m)(a) is not construed to mean something more than mere ownership and maintenance of rental property, then that term is surplusage. Statutes must be interpreted so that no word is rendered surplusage and every word is given effect. Donaldson v. State, 93 Wis.2d 306, 315,286 N.W.2d 817 (1980). The clear inference to be drawn from the conjunction of both ownership and occupancy in sec. 32.19(4m)(a), Stats., is that the Legislature intended to exclude real property rental from the category of business eligible for replacement payments under the Relocation Act.
The legislative history of the amendment to sec. 32.19(4m), Stats., also supports this conclusion. The "occupancy" condition on eligibility was included initially in 1979 Assembly Bill 1180 (the Annual Budget Review Bill, ch. 221, Laws of 1979), but was removed by a partial veto which the governor explained in his veto message to the Legislature: *Page 267 
 There is an apparent inconsistency between existing law and these changes because these sections [283e, 283m and 283s, 1979 Assembly Bill 1180] use the word "occupied" instead of "operated." This would prohibit absentee owners from being eligible for replacement business and farm assistance under the revised definition. This treatment is inconsistent with other sections that give absentee owners the benefits of a business.
Assembly Journal, 1979 Session, April 30, 1980, at 3440-41.
The Legislature failed to override the governor's partial veto. But, the "owner-occupant" language reappeared in the June, 1980, Special Session Assembly Bill 9, introduced on June 3, 1980. The bill's author requested a bill draft to "reverse partial veto of `and occupied' for business [but] . . . leave farms as is." (Drafting file on ch. 358, Laws of 1979, Wisconsin Legislative Reference Bureau.) The Legislative Reference Bureau's analysis, printed with the bill, stated: "This bill requires the owner of a displaced business operation to occupy the property on which the displaced business is located in order to qualify for a replacement payment." The bill was eventually enacted into law in almost the identical form as originally introduced and became ch. 358, Laws of 1979.
In accord with this result is the holding in Redevelop. Author.of Allegheny Cty. v. Stepanik, 25 Pa. Commw. Ct. 180,360 A.2d 300 (1976), involving a relocation assistance statute similar, but not identical, to the Wisconsin Relocation Act. The Pennsylvania statute, as interpreted by administrative rule, limited certain assistance payments to "owner-occupants." The plaintiff owned, but did not occupy a residential apartment building in which she rented living spaces to others. In deciding that the plaintiff was not eligible under the Pennsylvania statute, the appellate court said, 360 A.2d at 302:
 It is clear that an owner who conducts a business primarily for the lease or rental of his real property is not an "occupant" of such property. "Occupant" is defined as "one who has the actual
use, possession or control of a thing." Black's Law Dictionary 1230 (4th ed. rev. 1968). (Emphasis added.) "Occupancy", with respect to realty, is defined variously as actual possession or the "act of taking and holding possession." Id. 1229. (Emphasis added.) Therefore, "occupancy" requires more than the mere right to possess or control property — the right to possess *Page 268 
or control must actually be exercised. Thus, while an owner who conducts a business primarily for the lease or rental of his real property may have the right to possess or control the leased premises, he does not have the actual possession or control to be an owner-occupant.
Further, the Pennsylvania Supreme Court in affirming the lower appellate court's decision, observed:
 The Legislature's careful limitation of eligible recipients to "person [s] . . . displaced from [their] place of businesses" reveals its intent to deny special dislocation damages to landlords such as appellant not physically occupying the premises condemned. Neither appellant nor her business physically occupied the premises. Hence, neither she nor her business was displaced from the premises in the common, everyday sense of those terms. . . .
Redevelopment Authority, Etc. v. Stepanik, 479 Pa. 199,387 A.2d 1292, 1294 (1978).
As indicated in one of your illustrative examples, it is highly likely that some cases will involve property owners who use a portion of their premises for business purposes, for example, a bar or restaurant, and lease the remainder to tenants. In those cases, those property owners may be entitled to business replacement payment for that portion of the premises which they occupied for their own businesses but may not receive replacement payments for the leased portions. See Redevelopment Auth. ofLuzerne Cty. v. Legosh, 39 Pa. Commw. Ct. 90, 394 A.2d 1089
(1978).
The Wisconsin Supreme Court has recognized that the Legislature has the power to impose conditions and limitations on relocation assistance as long as those limitations do not impair a condemnee's constitutional right to just compensation for the property actually taken for public use. Luber v. MilwaukeeCounty, 47 Wis.2d 271, 276-77, 177 N.W.2d 380 (1970); Aero AutoParts, Inc., 78 Wis.2d at 246. Business replacement payments represent amounts of money over and above the fair market value of the real and personal property taken by the condemning authority. The Legislature has determined that certain classes of persons, owners and tenants alike, may suffer economic consequences as a result of public acquisition that cannot be adequately compensated under ordinary rules of valuation applicable *Page 269 
to eminent domain cases. Thus, special consideration is given to business operators who lose their business establishments and their established clientele and who must seek comparable facilities in order to continue in business. It is not clearly unreasonable that the Legislature has chosen to exclude nonoccupying rental owners from the class of intended beneficiaries. Displaced landlords receive full value for the property taken and are eligible for moving and loss of business payments even if they choose not to remain in the rental business. Also, the Legislature may have determined that such displaced landlords do not face the difficulties, both in kind and degree, that operators of other kinds of businesses, which may have special location and facility needs, face when suddenly uprooted to make way for a public project.
Accordingly, it is my opinion that owners of rental property who do not physically occupy the real property taken for public use are not eligible for business replacement payments under sec.32.19(4m), Stats., as affected by chs. 221 and 358, Laws of 1979.
BCL:DF