Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* Regina Gaylor, Appellee.

Submitted on briefs, May 3, 1982, to Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Michael J. Creighton,* Assistant Counsel, with him *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*William P. Bresnahan, Bresnahan & Caputo,* for appellee.

OPINION BY JUDGE ROGERS, July 27, 1982:

The appellee Regina Gaylor owned an apartment house containing four units, one of which she occupied and the other three she rented. The appellant Pennsylvania Department of Transportation (PennDOT) took the property by eminent domain and viewers awarded Gaylor $50,600. She appealed but on the day scheduled for trial by a traverse jury the parties settled the matter of the damages for the take.

We are told by PennDOT, and this is not refuted, that Gaylor also received from PennDOT, payments provided for persons displaced from their dwellings by either Section 602-A or Section 603-A of the Eminent Domain Code.[1]

This case is occasioned by Gaylor's claim additionally for damages provided to persons displaced from their places of business for dislocation of such businesses by Section 601-A(b)(3) of the Code which provides:

> (b) Any displaced person who is displaced from his place of business or from his farm operation shall be entitled, in addition to any payment received under subsection (a) of this section, to damages for dislocation of such business or farm operation as follows:
>
> ....
>
> (3) In addition to damages under clauses (1) or (2) of this subsection, damages of not more

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-601A.

than ten thousand dollars ($10,000) nor less than twenty-five hundred dollars ($2,500), in an amount equal to either (i) forty times the actual monthly rental, in the case of a tenant, or forty times the fair monthly rental value, in the case of the owner-occupant; or (ii) the average annual net earnings, whichever is greater.

The Attorney General, pursuant to authority conferred by Section 604-A of the Code had promulgated regulations effective during the events of this case, as follows:

To be eligible for payment under subsection (b)(3)(i) of the act (26 P.S. §1-601-A (b)(3)(i)) a business must occupy the premises from which it is displaced. Thus, in the case of the business of leasing or renting real property conducted by a person who does not occupy any part of the premises, payment under subsection (b)(3) of the act (26 P.S. §1-601A (b)(3)) shall be limited to the average annual net earnings of the real property (subsection (b)(3)(ii)).

(A) An owner-occupant or tenant may choose payment under subsection (b)(3)(i) of the act for the portion of the premises occupied by him and used for business purposes.

(B) Payment to an owner-occupant under subsection (b)(3)(i) of the act shall be calculated on the basis of the fair monthly rental value of the portion of the premises occupied by such owner-occupant and used for business purposes. Payment for the portion of the premises rented to one or more tenants shall be based on the owner-occupant's average annual net earnings from such portion of the premises under subsection (b)(3)(ii).

37 Pa. Code §151.4(4)(iv).

Gaylor contends that her entire building was her place of business and that her occupancy of one of the four apartments made her an owner-occupant displaced from her place of business entitled by Section 601-A(b)(3)(i) to be paid forty times the fair monthly rental value of all of the units, a sum which the parties have stipulated exceeds $10,000. PennDOT contends, that having claimed and received damages provided to persons displaced from their dwellings, Gaylor was entitled to no damages as a person displaced from a place of business with respect to her own apartment, and that pursuant to the statute and the Attorney General's regulation at part B above she is entitled only to the average annual net earnings of the three apartments rented to others, a sum the parties have stipulated to be less than $2,500.

The Supreme Court has described these special dislocation damages as "part of a cluster of benefits, including moving expenses and damages for lost personal property. They provide temporary income for a displaced commercial enterprise unable to absorb, through increased sales at another business location, losses caused by condemnation." *Redevelopment Authority of Allegheny County v. Stepanik*, 479 Pa. 199, 202, 387 A.2d 1292, 1293 (1978). As a threshold criterion for eligibility under Section 601-A(b), the condemnee must demonstrate that he has been "displaced from his place of business or from his farm...." With respect to whether the business dislocation damages of Section 601-A(b)(3) are available to a landlord who owns but does not occupy a condemned residential apartment building, the Court in *Stepanik* held:

> The legislature's careful limitation of eligible recipients to "person[s] ... displaced from [their] place of business " reveals its intent to deny special dislocation damages to landlords

such as dislocation damages to landlords such as appellant not physically occupying the premises condemned. Neither appellant *nor her business* physically occupied the premises. Hence, neither she *nor her business* was displaced from the premises in the common, everyday sense of those terms as used in Section 601-A(b)(3)…. Because the taking did not displace appellant, this Section of the Code precludes her recovery of special dislocation damages. (Emphasis added.)

*Id.* at 203, 387 A.2d at 1294.

Gaylor contends, and the lower court found, that her situation is distinguishable from that presented in *Stepanik* because of her personal occupancy of one of the four apartment units. The lower court reasoned:

Because Regina Gaylor conducted a business operation of the renting of real estate, and since she and her business occupied the entire four-unit apartment building, she is entitled to use the formula of forty times the fair rental value to calculate her business dislocation damages and is entitled to $10,000.00.

PennDOT argues that this interpretation of Section 601-A(b)(3) is erroneous as authorizing business dislocation damages to be recovered by condemnee owners of a multi-unit residential rental property, calculated with reference to the whole of the property condemned, so long as the owner occupies any part of the property condemned. We agree with PennDOT that such an interpretation is inconsistent with the statutory language and with the interpretive discussion contained in *Stepanik*. Only persons displaced from their places of business are eligible for Section 601-A(b)(3) damages. *Stepanik* tells us that the owner of condemned residential rental property is not, without more, eligible for benefits under this section

because the condemned property, without more, is not a place of business from which he has been displaced.

Appellee argues that because the Code defines "business" to include the rental of real property, a rental apartment house must be the place of business of its owner. This argument was implicitly rejected in *Stepanik*. The definition referred to does not purport to designate the place where the business of renting real property is conducted. A rentier may conduct business, either his rental business or some other, at the location of one of his rental properties but it is equally conceivable that all of his business activities are conducted elsewhere. We reject the notion that the legislature, by defining the leasing of real property as a business, intended also to define as a place of business each property so leased even when leased for and in fact used exclusively for residential purposes.

We also reject appellee's contention that her occupancy of one of the units *as a residence* requires a different result. If, as was decided in *Stepanik*, a multi-unit residential rental property is not the absent owner's place of business; the residential occupancy by the owner of one of the units works no transformation unless he also there conducts some business from which he is displaced. Moreover, an owner conducting business in one of the units of a condemned multi-unit property may calculate displacement of damages only with reference to the fair monthly rental value of the unit (or units) occupied since, as to the other units, he has not been displaced from his place of business.

Therefore, appellee is ineligible for damages under Section 601-A(b)(3) with respect to those rental units she leases for residential purposes to others and is eligible for damages under this section with respect to the unit she occupies only if she there conducts business: either her rental business or some other. We recognize that the Attorney General's regulations, set forth

above, would seem to require a different result. However, in our view those regulations are inconsistent with the statutory provision they are intended to interpret to the extent that they authorize Section 601-A(b)(3) special dislocation damages, measured either by monthly rental value or annual net earnings, to condemnees who have not been displaced from their place of business. The Court in *Stepanik* could not have been more explicit that absentee owners of residential rental property are fully compensated for the condemnation of their property by the award of general damages and, therefore, are ineligible for additional damages under Section 601-A(b)(3). *Id.* at 203, 387 A.2d at 1294. The Code could not be more clear that only persons displaced from their places of business are eligible for special dislocation damages under Section 601-A(b)(3) — which category of persons does not include, *Stepanik* holds, owners of condemned residential rental property who conduct no business in the property condemned.

Nevertheless, unaccountably, the instant regulations authorize to just such absentee owners these special dislocation damages, albeit with the restriction that the damages be calculated with reference only to annual net earnings. Indeed, even this restriction has no apparent support in the Code which is subject to no interpretation other than that every person eligible for damages under Section 601-A(b)(3) may calculate those damages with reference to both the fair monthly rental value and the annual net earnings and then shall receive "whichever [sum] is greater." To repeat, appellee is eligible under the terms of the Code for these special dislocation damages only if the unit she occupied and from which she was displaced by the act of condemnation was her place of business. Regulatory

pronouncements of the Attorney General can accomplish no greater eligibility.[2]

Regretfully, we are unable on this record to resolve this determinative issue. As we have indicated, the opinion of the court below contains a statement to the effect that appellee and her business activities "occupied the entire four-unit apartment building...." At another point the court below writes "in the case sub judice, the condemnee physically occupied one of the units in her building, but conducted no business therein except the business of renting out the other units." Appellee's brief contains the following with respect to this issue.

> It is agreed between the parties ... that REGINA GAYLOR occupied part of the premises from which the business was displaced; that REGINA GAYLOR managed the apartment building from the residential unit which she occupied; that REGINA GAYLOR did not have a real estate agency which performed management duties from outside the property; ... and that REGINA GAYLOR qualified for business dislocation damages under Article VI-A Section 601-A(b)(3) of the Pennsylvania Eminent Domain Code.

---

[2] It may be, as the parties seem to indicate in their briefs, that they have entered into a stipulation which precludes this Court from deciding the question of appellee's eligibility under the regulations for $2,500 in damages calculated with reference to the annual net earnings of the three units she does not occupy. Some such stipulation appears to have been operative in the *Stepanik* litigation. However, as we indicate, no stipulation of the parties has been included in the record certified to this Court and our decision, while it indicates our view of the proper interpretation of the controlling statute, of course, cannot preclude the parties from arriving at some other settlement of their dispute.

The stipulation of the parties to which reference is evidently being made in this discussion was not included in the record certified to this Court.

For its part, the Commonwealth asserts that neither the appellee's unit nor any other portion of the condemned property was "a business site." In this regard it is unclear whether the Commonwealth is asserting its view, clearly inconsistent with that of the appellee, of the facts agreed upon by the parties or is, instead, arguing that the appellee may not show that the unit she occupies is her place of business because she applied for and received damages under another section of the Code having to do with persons displaced from their residences.

We agree with the court below that the Commonwealth has cited no reason in the statutory language or practical experience why a condemnee might not have occupied the property condemned both as a residence and as a place of business and therefore have suffered and be eligible for recovery of damages related to each aspect of the dislocation. Moreover, if the unit occupied by the appellee was her place of business and if the fair monthly rental value of that unit is in excess of two hundred and fifty dollars then she would be eligible for the $10,000 maximum amount of special dislocation damages under this Section.

We cannot at this time and on this record resolve these issues and will remand the record for further proceedings including, at least, the making of factual findings germane to the issue of whether the unit occupied by the appellee was her place of business and, if so, the amount of the fair monthly rental value of the unit as well as the business' annual net earnings and an appropriate judgment within the terms of Section 601-A(b)(3) of the Code and any stipulation of the parties.

Order vacated; record remanded for further proceedings consistent with this opinion.

ORDER

AND Now, this 27th day of July, 1982, the order of the Court of Common Pleas of Allegheny County is vacated and the record is remanded for further proceedings consistent with this opinion.