526 A.2d 843

Carlynton School District, Appellant *v.* Raymond T. Hays and Janet E. Hays, his wife, Appellees.

Argued March 26, 1987, before Judges BARRY and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Larry P. Gaitens,* with him, *Vincent A. Tucceri, Gaitens & Tucceri, P.C.,* for appellant.

*Thomas J. Dempsey,* for appellees.

OPINION BY SENIOR JUDGE KALISH, May 29, 1987:

This is an appeal of an order of the Court of Common Pleas of Allegheny County concerning an eminent domain case which involves an award of special damages. At trial, it was stipulated that appellees, Raymond T. Hays and Janet E. Hays, were paid $53,000 as general damages. Appellant, Carlynton School District, appeals a jury award of special damages as follows:

| | |
|---|---|
| Damages for replacement housing | $ 4,000 |
| Damages for search expenses | 2,034 |
| Business dislocation damages | 10,000 |
| Total | $16,034 |

Appellant does not contest the award for search expenses. We affirm the trial court's award of special damages.

Our scope of review is to determine whether the trial court committed an error of law. *Pidstawski v. South Whitehall Township,* 33 Pa. Commonwealth Ct. 162, 380 A.2d 1322 (1977).

The building involved in the taking was an apartment building in which appellees, as owners, occupied the first floor and basement. The dining room of this apartment was used by appellees to conduct their business of managing and leasing the other apartments located on the second and third floors.

The house to which appellees relocated was a one-floor ranch type house. There was testimony by appellees, as well as a realtor, that the house was decent, safe and sanitary, and was about six blocks from transportation facilities. Appellees testified that they spent four months looking for a replacement property, using newspaper ads and searching in about six nearby counties, as well as the City of Pittsburgh and Mount Lebanon Township. They spent a total of 226 hours in their search.

The record also shows that for the $53,000 paid to them as general damages for the real estate, appellees were unable to buy a comparable property which they could afford. They paid $57,000 for the replacement property, $30,000 of which was paid down, and the balance was mortgaged. The difference between the award of general damages and the price of the replacement property, namely, $4,000, was awarded as replacement damages. Appellant contests this award in addition to the award of $10,000 for business dislocation damages.

Section 602A(a)(1) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-602A(a)(1), provides that a person who is displaced from a dwelling which he actually owns and occupies shall receive an amount, not in excess of $15,000. This sum, when added to the acquisition cost

of the acquired dwelling, shall equal the reasonable cost of a comparable replacement dwelling which is decent, safe and sanitary, adequate to accommodate such person, reasonably accessible to public services and place of employment, and is available to such person on the private market. Recognizing that it may be necessary to finance such a replacement dwelling, the Code provides for compensation to include service charges under section 602A(a)(2) of the Code.

In its instructions to the jury, the trial court read virtually verbatim from the provisions of the Code which relate to replacement housing, and then stated:

> If you find the testimony of Mrs. Hays to be believable, that $30,000 was paid by her and her husband down . . . and that the property was a decent, safe and sanitary dwelling, reasonably comparable to the one that was taken from them, then you should award the sum of $4,000.

Transcript of charge of the court at 19. The record contained much evidence on this point from appellees on direct and on cross-examination. There was, however, no direct evidence offered by appellant on this point. Thus, the trial judge clearly left to the jury, as the fact finder, the issue of comparability. It was not taken from them.

Section 201(7) of the Code defines "business" to include the rental of real property. Section 601A(b)(3) of the Code permits any displaced person who is displaced from his place of business to recover special damages as business dislocation damages only if the business cannot be relocated without a substantial loss of existing patronage. Section 201(8) of the Code defines a displaced person as any condemnee or other person legally in possession who moves or moves his personal property as a result of the acquisition. Since appellees were owner-occupants, they claimed and recovered $10,000 as busi-

ness dislocation damages under the formula set forth in section 601A(b)(3) of the Code which provides for forty (40) times the fair monthly rental value but limited to no more than $10,000. In *Redevelopment Authority v. Stepanik*, 479 Pa. 199, 387 A.2d 1292 (1978), our Supreme Court said clearly that only owner-occupants displaced from their place of business can recover business dislocation damages.

Appellant contends that based on *Moninghoff Appeal*, 40 Pa. Commonwealth Ct. 288, 397 A.2d 1252 (1979), appellees did not establish a loss of substantial patronage. In that case, the amount of the award for the real estate was insufficient to purchase a "matching" unit. The court held this fact to be insufficient to show a loss of substantial patronage and that the business dislocation provision of the Code was not intended to supplement an award.

Appellant cites as error the trial court's refusal to instruct the jury that the business dislocation damage provision was not intended to supplement an insufficient real estate award. This was based on a statement made by the court on review. At trial, such a charge would be misleading. Special damages were indeed intended to supplement general damages in the sense that they were designed to make compensation more just, since prior thereto, damages were limited to general damages. They were designed to provide for economic loss payments where a condemnee is displaced and suffers displacement loss.

It is the nature of the business enterprise as an economic unit and the inability to relocate this economic unit without losing substantial patronage that is the relevant issue. The burden is on the condemnee to show that the nature of the business enterprise is of such a character that it could not be moved to another location without losing substantial patronage. *March Brothers v.*

*Redevelopment Authority of Philadelphia,* 20 Pa. Commonwealth Ct. 212, 342 A.2d 131 (1975).

In *March Brothers,* the court, in discussing business dislocation damages, indicated that the condemnee met this burden when its principal testified that he searched Philadelphia for four months in an effort to obtain a replacement property, but that he was unable to find a building which was *adaptable to meet his business requirements* and that *"the cost of naked ground made the erection of a new, suitable installation economically unfeasible." Id.* at 215, 342 A.2d at 133 (emphasis added). Thus, the economic feasibility of obtaining comparable property is a factor to be considered together with all the pertinent circumstances, including the comparative importance of the business in its present location. The building is not considered as part of the real estate for condemnation purposes, but rather the nature of the building is considered as part of the business enterprise, if the condemnee could not find a building suitable and adaptable to his needs.

In the instant case, the record shows, in addition to the insufficiency of the award for general damages to purchase a comparable unit, that there was evidence of the type and nature of the business conducted and the people who patronized it. Furthermore, what the court said in *Moninghoff* was actually dicta, since the claimant did not establish owner-occupancy, and under *Stepanik* that element is necessary to establish business dislocation damages.

In *Department of Transportation v. Gaylor,* 68 Pa. Commonwealth Ct. 2, 448 A.2d 656 (1982), this court decided that the condemnee was entitled to receive these special damages, if the unit she occupied and from which she was displaced was her place of business. The formula used in determining business dislocation damages as set forth in section 602A(b)(3) of the Code is

forty (40) times the fair monthly rental of the unit, but not in excess of $10,000 nor less than $2,500. Where the place of business in an apartment was the kitchen area of the apartment from which the owner-occupant was displaced, it would be absurd to say that the legislature intended the damages to be forty (40) times the fair rental value of the kitchen. Unlike a situation involving office space, it is the association of the kitchen as part of the apartment itself that determines its value. The formula for determining business dislocation damages is forty (40) times the rental value of the apartment space occupied by condemnee. In this instance, the record shows $250 per month, which when multiplied by forty (40) equals $10,000, which is the amount awarded by the jury.

Accordingly, we affirm the trial court's award of special damages.

### ORDER

NOW, May 29, 1987, the order of the Court of Common Pleas of Allegheny County, No. G.D. 81-26191, SUR. No. G.D. 78-12483, dated May 9, 1986, is affirmed.

Judge PALLADINO dissents.