560 A.2d 905

**WESTERN PENNSYLVANIA WATER COMPANY, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1989.

Decided June 21, 1989.

Raymond H. Conaway, Zimmer, Kunz, Loughren, Hart, Lazaroff, Trenor, Banyas & Conaway, P.C., Pittsburgh, for petitioner.

Zelda Curtiss, Gail A. Myers, Asst. Counsels, Pittsburgh, for respondent.

Before CRUMLISH, Jr., President Judge, COLINS, J., and BARBIERI, Senior Judge.

COLINS, Judge.

Western Pennsylvania Water Company (WPW) petitions for review of an order of the Environmental Hearing Board (Board) dated August 25, 1988 which denied the Department of Environmental Resources' (DER) Motion for Summary Judgment and denied WPW's appeal from DER's order of September 13, 1988.

WPW is a Pennsylvania corporation which sells drinking water to customers in Washington County. In May, 1983, WPW acquired a twenty-foot wide permanent easement and right-of-way across the property of Leah Bellaire in order to extend its distribution system in McDonald Borough, Washington County. Mrs. Bellaire's property is located near the center of an active oil field discovered in the 1890's.

On November 10, 1983, during excavations and pipe laying activities on the easement, Alex Paris Contracting Co., a contractor hired by WPW, encountered an abandoned oil well about one and one-half feet below the ground surface.[1] At the same time, a greenish substance determined to be

1. In order to install the pipeline, Paris employees, utilizing a backhoe, excavated a ditch approximately four feet wide by six feet deep. While excavating on or about November 10, a tooth on the bucket of the backhoe caught a piece of wood and pulled it out. This piece of wood was part of a wooden circular structure which formed a casing around the oil well. (Stipulation of Facts filed January 10, 1986, Nos. 5, 7 and 15.)

crude oil seeped into the trench that they were digging. DER oil and gas inspectors visited the site of the abandoned oil well on November 11, 13 and 14, 1983 at which time they instructed WPW to collect the oil, gather up the contaminated soil and have it properly disposed of but not to cover the abandoned well. Paris employees pumped the water and oil from the open trench into a 500 gallon tank over a three to four week period subsequent to the incident. The portion of the mixture deemed to be water was drained out of the tank on to the ground surface. The contaminated soil was removed from the trench and placed on to a pile seven to eight feet high on the adjacent grounds. The trench was then completely backfilled, covering over the abandoned well.

DER issued an order to WPW on September 13, 1984, pursuant to Sections 5, 316, 402 and 610 of what is commonly referred to as the Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended*, 35 P.S. §§ 691.5, 691.316, 691.402 and 691.610; Sections 502 and 503 of the Gas Operations, Well–Drilling Petroleum and Coal Mining Act, Act of November 30, 1955, P.L. 756, *as amended*, (Gas Operations Law), 52 P.S. §§ 2502 and 2503, repealed by Section 606(a) of the Act of December 19, 1984, P.L. 1140 [2]; Sections 104(7) and 602 of the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended*, (SWMA), 35 P.S. §§ 6018.104(7) and 6018.602; and Section 1917–A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, added by Section 20 of the Act of December 3, 1970, P.L. 834, 71 P.S. § 510–17. This order directed WPW to: (1) within thirty days file with the Bureau of Oil and Gas Management a notice of intent to plug the well and a plat of the abandoned oil well pursuant to Section 205 of the Gas Operations Law, 52 P.S. § 2205; [3] (2) within thirty days

---

2. DER's order was issued prior to the effective repeal. Moreover, the Board's decision was not based upon these Sections, but was based upon the "reasonably necessary" limitation under Section 316 of the Clean Streams Law.

3. This Section was also repealed by Section 606(a) of the Act of December 19, 1984, P.L. 1140. However, as noted in footnote 2 of this

of filing the notice of intent to plug the well and a plat, to plug the well in accordance with Section 206(c) of the Gas Operations Law, 52 P.S. § 2206(c); (3) submit a plan within thirty days to the Bureau of Oil and Gas Management setting forth the measures WPW will take to prevent the occurrence of such pollutional incidents in the future and measures WPW will take should such a pollutional event occur; (4) within thirty days, submit to the Bureau of Solid Waste Management an ER–SWM–14 request for approval for disposal of a solid waste for the disposal of the contaminated soil in an approved landfill and within twenty-one days of written department approval, dispose of the contaminated soil in the approved landfill; and (5) within forty-five days, submit to the Department for its approval a report prepared by a hydrogeologist determining the extent of ground water contamination in the vicinity of the oil well and the Hi–View water well,[4] and proposing abatement measures, and a schedule for implementation.

WPW appealed that order to the Board on October 15, 1984. On December 11, 1985, DER filed a Motion for Summary Judgment with respect to WPW's liability under Section 316 of the Clean Streams Law. On January 10, 1986, the Board ruled that any evidence bearing on foreseeability or negligence with respect to WPW's excavation activity would be excluded at the forthcoming hearing as irrelevant pursuant to *National Wood Preservers, Inc. v. Department of Environmental Resources*, 489 Pa. 221, 414 A.2d 37 (1980). A hearing on the merits was held before the Board on January 21 through January 23, 1986. The Board issued an Adjudication and Order on August 25, 1988 which denied DER's Motion for Summary Judgment and denied WPW's appeal from the September 13, 1984

opinion, the repeal has no impact upon our decision in the matter *sub judice.*

4. In January, 1984, a water well was drilled on the adjacent property of Hi–View Lumber Company at a location approximately 150 feet from the site of the abandoned oil well in question. During the well-drilling operation, oil was encountered. (Board's Finding of Fact No. 21.)

order of DER. WPW now petitions this Court for review of the August 25, 1988 order.

We must affirm the Board unless we determine that an error of law has been committed, constitutional rights have been violated, or that necessary factual findings are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pennsylvania Game Commission v. Department of Environmental Resources*, 97 Pa.Commonwealth Ct. 78, 509 A.2d 877 (1986), *aff'd*, 521 Pa. 121, 555 A.2d 812 (1989).

▮ WPW first argues that as an easement holder, its interest in the real property is not sufficient to render it an occupant within the meaning of Section 316 of the Clean Streams Law, 35 P.S. § 691.316. We disagree. That section provides in pertinent part:

> Whenever the department [DER] finds that pollution or a danger of pollution is resulting from a condition which exists on land in the Commonwealth the department may order the landowner or *occupier* to correct the condition in a manner satisfactory to the department.... For the purpose of this section, 'landowner' includes any person holding title to or having a proprietary interest in either surface or subsurface rights.

(Emphasis added.)

The Board held that a permanent easement for the installation of a water pipe line is a sufficient interest[5] in land to bring the owner of the easement within the scope of Section 316 of the Clean Streams Law. WPW maintains that its easement is a limited purpose right-of-way and that it was only temporarily present for the purpose of installing a water pipeline; therefore, it is not an owner or occupant of the land. It cites *Redevelopment Authority of Allegheny County v. Stepanik*, 25 Pa.Commonwealth Ct. 180, 360 A.2d 300 (1976), *aff'd*, 479 Pa. 199, 387 A.2d 1292 (1978), for

---

5. The Deed of Easement granted to WPW, "its successors and assigns forever, an easement and a free uninterrupted and unobstructed right of way, in, under, across and over" Bellaire's property. (Board's Finding of Fact No. 3, WPW's Exhibit A.)

the proposition that an occupant must be in actual possession rather than simply having the right to gain possession. However, we agree with the Board's position that WPW clearly is in actual possession of the easement since its water pipeline is buried there not just temporarily but continually as a result of a permanent easement granted to WPW forever.

■ WPW next argues that even if it is held to be an occupant within the definition of Section 316 of the Clean Streams Law that DER has failed to prove either that WPW knew or reasonably could have known of the conditions prior to excavation of the site or that WPW adopted the polluting condition. WPW asserts that in the absence of such evidence, an owner or occupant of land cannot be required to abate a condition it did not cause.

As pointed out by the Board in its discussion on Page 9 of the Adjudication:

[t]he evidence clearly establishes that the Abandoned Well leaked oil into the surrounding earth, contaminated the ground water and will continue to do so in the future unless properly plugged. However, the evidence is not sufficient to prove that WPW's pipe laying activities caused the Abandoned Well to leak or that the oil in the Hi–View Well has come from the Abandoned Well.

The only conclusive evidence with respect to WPW performing an affirmative act that caused or contributed to the problem is that with respect to their disposition of the oil-contaminated soil. The Board concluded that DER was clearly authorized to order WPW to properly dispose of the oil contaminated soil. We agree with the Board that WPW's position that it should not be responsible for deleterious materials encountered during excavation and that it can simply dump them in a pile on the ground and leave them there, is incredulous.

■ WPW erroneously relies on language in *McIntire Coal Co. v. Department of Environmental Resources*, 108 Pa.Commonwealth Ct. 443, 530 A.2d 140 (1987), *petition for*

*allowance of appeal denied,* 518 Pa. 614, 540 A.2d 536 (1988), in support of its argument. The pertinent passage reads:

Section 316 imposes liability upon an owner or occupier of land for a polluting condition thereon even if the owner or occupier did not cause the condition. However, before liability will attach it must be shown that the owner or occupier knew of the polluting condition and positively associated with it by engaging in some affirmative conduct, indicating an intent to adopt the condition.

*Id.,* 108 Pa.Commonwealth Ct. at 452, 530 A.2d at 144. However, our holding therein was based upon the Board's adjudication assigning responsibility for causing the condition on the McIntires which was supported by substantial evidence. The language WPW relies upon did not form the basis for our holding and is merely dicta. Further, we dismiss WPW's argument since fault is not a prerequisite to establishing liability under Section 316 of the Clean Streams Law. *National Wood Preservers; Department of Environmental Resources v. PBS Coals, Inc.,* 112 Pa.Commonwealth Ct. 1, 534 A.2d 1130 (1987), *petition for allowance of appeal denied,* 520 Pa. 592, 551 A.2d 218 (1988); *Bonzer v. Department of Environmental Resources,* 69 Pa.Commonwealth Ct. 633, 452 A.2d 280 (1982).

Lastly, WPW argues that DER's order was not a valid exercise of the police power. WPW maintains that since there are many abandoned wells in the area of their easement which DER has not ordered plugged, its order to WPW to plug one well is contrary to the second prong of the standard set forth in *Lawton v. Steele,* 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894). In *Lawton,* the U.S. Supreme Court articulated the standard to be used by courts in determining whether a state's exercise of the police power is valid; (1) the interest of the public must require it; (2) the means chosen must be reasonably necessary for the accomplishment of the purpose; and (3) the means chosen must not be unduly oppressive upon individuals.

Our Supreme Court has adopted the *Lawton* standard in its assessment of regulatory legislation under the Pennsylvania Constitution. *National Wood Preservers.* It held in *National Wood Preservers* that a DER order to a landowner or occupant under Section 316 of the Clean Streams Law, requiring correction of a condition causing pollution, satisfied the first two prongs of the *Lawton* standard.[6] We agree with the Board in the case *sub judice* that DER's order, which calls for the correction of a polluting condition on the Bellaire easement and a plan to handle similar problems should they arise in the future, must be held to satisfy *Lawton's* first two prongs. The Board concluded that any argument presented as to the third prong of the *Lawton* standard was relinquished since WPW did not present any evidence of any economic or intrusive impact as a result of the order.

In sum, we agree with the Board's conclusion that WPW's handling of the contaminated soil was a violation of the Clean Streams Law and the SWMA and that DER's order requiring proper disposal of the material was reasonable and proper. Additionally, we agree with the Board's conclusion that DER's order requiring WPW to correct the condition and devise a plan for handling similar problems in the future is valid because the interest of the public requires such action and the means chosen by DER are reasonably necessary to accomplish the purpose.

The August 25, 1988 order of the Board is affirmed.

## ORDER

AND NOW, this 21st day of June, 1989, the order of the Environmental Hearing Board dated August 25, 1988 is affirmed.

6. "[M]aintenance of the environment is a fundamental objective of state power." *National Wood Preservers,* 489 Pa. at 235, 414 A.2d at 44. "Section 316's authorization of DER to order a landowner or occupier to correct conditions on his land causing pollution or a danger of pollution is 'reasonably necessary' for eliminating water pollution." *Id.,* 489 Pa. at 236, 414 A.2d at 44.